**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHASE FROST,** | **:** | |
| | **:** | |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | Civil Action No. 17-3869 |
| | **:** | |
| **CITY OF PHILADELPHIA,** | **:** | |
| | **:** | |
| Defendant. | **:** | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2019, upon

consideration of Defendant's Motion for Summary Judgment and any response thereto, it is

hereby **ORDERED** and **DECREED** that Defendant's motion is granted and all Plaintiff's claims

are **DISMISSED WITH PREJUDICE.**


BY THE COURT:



_____
MICHAEL M. BAYLSON, J.

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHASE FROST,** | **:** | |
| | **:** | |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | Civil Action No. 17-3869 |
| | **:** | |
| **CITY OF PHILADELPHIA,** | **:** | |
| | **:** | |
| Defendant. | **:** | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant files this Motion for Summary Judgment seeking to dismiss all of Plaintiff's claims. In support thereof, and pursuant to L.R.Civ.P. 7.1, Defendants rely on the accompanying Memorandum of Law.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: December 11, 2018                     BY:  s/ *Frank E. Wehr II*
Frank E. Wehr II
Assistant City Solicitor
Pa. Attorney ID No. 318464
City of Philadelphia Law Dept.
1515 Arch St., 16th Fl.
Philadelphia, PA 19102
(215) 683-5183
frank.wehr@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **CHASE FROST,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 17-3869 |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| | : | |
| Defendant. | : | |

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Defendant City of Philadelphia moves for summary judgment, seeking judgment in its favor on all claims. Plaintiff brings the instant suit claiming discrimination and hostile work environment based on disability, and retaliation in violation of the American's with Disabilities Act ("ADAAA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO")[1]. Plaintiff fails to establish a *prima facie* case for disability discrimination under the above-referenced laws because he cannot establish that he has been subjected to an adverse employment action as a result of discrimination. Plaintiff fails to establish a *prima facie* case for failure to accommodate because he was in fact accommodated.

---

[1] The Third Circuit has held that "the PHRA is to be interpreted as identical to the federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Slagle v. County of Clarion, 435 F.3d 262, 265 n. 5 (3d Cir.2006) (citing Fasold v. Justice, 409 F.3d 178, 184 n. 8 (3d Cir.2005)). Further, Title VII, the PHRA and the PFPO are so similar that discrimination under any one of them is generally presumed to constitute employment discrimination under the other two as well. See Joseph v. Cont'l Airlines, Inc., 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) (noting that the analysis of a discrimination claim under Title VII applies with equal force to claims under the PFPO resting on the same facts); See also Richards v. Foulke Assocs., Inc., 151 F. Supp. 2d 610, 614 (E.D. Pa. 2001) (discussing the similarity between the PHRA and the PFPO). Therefore, my analysis of Plaintiff's hostile work environment, discrimination, and retaliation under the ADAAA apply equally to the same claims under the PHRA and the PFPO.

Plaintiff fails to establish a *prima facie* case for hostile work environment on the basis of disability because he was not subjected to unwelcome harassment that was based on his disability or request for an accommodation. Even if this Court were to find Plaintiff was subjected to harassment based on his disability or request for an accommodation, he still cannot establish a *prima facie* case for hostile work environment based on disability because he was not subjected to harassment that was severe or pervasive. Plaintiff fails to establish a *prima facie* case for retaliation because he cannot establish any causal connection between the City's adverse employment action—rejecting Plaintiff from probationary employment—and his protected activity—filing an EEO complaint. Finally, even if this Court were to find that Plaintiff has established a *prima facie* case for discrimination or retaliation under the above-referenced laws, Plaintiff's discrimination and retaliation claims should be dismissed because Plaintiff cannot establish that Defendant's legitimate non-discriminatory reason for rejecting Plaintiff from the Fire Academy was pretextual. For these reasons, which are more fully articulated below, Defendants respectfully request this Court dismiss all claims of Plaintiff's complaint with prejudice.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant incorporates by reference its Statement of Undisputed Material Facts as if set forth here.

## III.     PROCEDURAL HISTORY

Plaintiff filed the complaint in the instant case on August 29, 2017, and filed an amended complaint on October 31, 2017. See Docket ## 1,3. Services was waived on November 2, 2017. See Docket # 4. Defendant answered the amended complaint on December 29, 2017. See Docket #6. The parties engaged in and completed discovery, which closed on October 15, 2018. See Docket # 19. Dispositive motions are due on or before December 11, 2018, and this matter is ripe for decision. See Docket # 23.

## IV.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of illustrating for the court the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970). The moving party can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. 317 at 323-25.

Once the moving party has made a proper summary judgment motion, the burden switches to the nonmoving party. The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Industrial Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). As our Court of Appeals

has observed, "the mere existence of some evidence in support of the non-moving party will not

be sufficient to support a denial of a motion for summary judgment; there must be enough

evidence to enable a jury to reasonably find for the non-moving party on the issue." Petrucelli v.

Bohringer & Ratzinger, 46 F.3d 1298, 1308 (3d Cir. 1995). Although the Court must resolve all

doubts and consider the evidence in the light most favorable to the opposing party, United States

v. Diebold, Inc., 369 U.S. 654, 655 (1962), the non-moving party cannot escape summary

judgment by introducing "a mere scintilla of evidence" in his favor, Sarko v. Penn-Del Directory

Co., 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), aff'd, 189 F.3d 464 (3d Cir.

1999), or by relying on "conclusory allegations, improbable inferences, and unsupported

speculation[.]" J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d

1245, 1251 (1st Cir. 1996); accord Solt v. Alpo Petfoods, Inc., 837 F. Supp. 681 (E.D. Pa. 1993),

aff'd, 30 F.3d 1488 (3d Cir. 1994). To defeat summary judgment, the non-moving party cannot

rest on the pleadings, but rather must go beyond the pleadings and present "specific facts

showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also Lawrence v. National

Westminster Bank, 98 F.3d 61, 65 (3d Cir. 1996). Further, the Plaintiff must identify evidence of

record sufficient to establish every element essential to the claim. Petrucelli, 46 F.3d at 1308.

## V. ARGUMENT

1. Plaintiff Cannot Establish a *Prima Facie* Case of ADA Discrimination Because He Was Not Qualified to Perform the Essential Functions of the Job and Did Not Suffer An Adverse Employment Action As a Result of Discrimination.

Congress enacted the ADA in 1990 in an effort to protect otherwise qualified individuals

from being discriminated against in employment based on disability. See 29 C.F.R. § 1630. The

ADA prohibits an employer from discrimination against a qualified individual with a disability

4

because of the disability in regard to any terms, conditions, and privileges of employment. 42

U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual

with a disability who, with or without reasonable accommodation, can perform the essential

functions of the employment position that individual holds or desires." Id. § 12111(8). The term

"reasonable accommodation" includes the employer engaging in reasonable efforts to assist the

employee and to communicate with the employee in good faith.

To establish a *prima facie* case of discrimination under the ADA, Plaintiff must

demonstrate that (1) he is a disabled person under the ADA; (2) he is otherwise qualified to

perform the essential functions of his job with or without reasonable accommodation; and (3) he

has suffered an adverse employment action that was the result of discrimination. Taylor v.

Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999). Here, the City admits that Plaintiff

is disabled, and thus, he satisfies prong one of a *prima facie* case. However, Plaintiff is unable to

establish prongs two and three and is, therefore, unable to establish that the City failed to

accommodate his request for a reasonable accommodation.

 The ADA defines a "qualified individual" as one "who, with or without reasonable

accommodation, can perform the essential functions of the employment position that

such individual holds or desires." 42 U.S.C. § 12111(8); Buskirk v. Apollo Metals, 307 F.3d 160,

168 (3d Cir. 2002). The Interpretive Guidance to the EEOC Regulations divides this inquiry into

two prongs. First, a court must determine whether the individual satisfies the requisite skill,

experience, education and other job-related requirements of the employment position that

such individual holds or desires. *See* 29 C.F.R. § 1630.2(m); Skerski v. Time Warner Cable Co.,

257 F.3d, 278 (3d Cir. 2001). Second, it must determine whether the individual, with or without

reasonable accommodation, can perform the essential functions of the position held or sought. Id.

The term "reasonable accommodation" includes the employer engaging in reasonable efforts to assist the employee and to communicate with the employee in good faith.

Plaintiff is not a qualified individual because he was unable to perform the essential functions of the cadet position either with or without an accommodation. See Dogmanits v. Capital Blue Cross, 413 F. Supp. 452 (E.D. Pa. 2005) (employee did not establish that she was a "qualified individual" within the meaning of the ADA, where at the time of her termination from employment, she was unable to perform the essential tasks of her position, despite the assistance of reasonable work-at-home accommodations).

In Sarullo v. U.S. Postal Service, the Third Circuit affirmed the lower court's grant of summary judgment in the defendants' favor on national-origin discrimination and age claims after finding that the allegations were "speculative." 352 F. 3d 789, 799-800 (3d Cir. 2003). The defendants contended that the plaintiff, who was discharged after being arrested for selling controlled substances at work and was, therefore, not qualified. Id. at 791, 798. The court agreed with the defense, commenting that the plaintiff's "drug activity fatally undermines his suggestions that USPS's actions raise the inference of discrimination necessary to his *prima facie* case." Id. at 798. The court further commented that the plaintiff's "evidence of race discrimination consists solely of his own assertions that he was not rehired [following dismissal of the criminal charges] because he is Native American." Id. Although plaintiff brought his claims in Sarullo pursuant to Title VII, the "qualified individual" standard here is similar.

Here, plaintiff is not qualified for the position of cadet because he did not pass a written protocols quiz or its retest. Pursuant to the Philadelphia Fire Academy Guide Book Cadet Code of Conduct, employment as a Philadelphia FSP cadet is contingent upon, among other things, achieving an average score of 80% on Protocol Quizzes. Statement of Undisputed Material Facts

("SUMF") ¶ 48.In the event that a cadet does not pass a protocols quiz, one retest will be permitted. SUMF ¶ 49. If a cadet fails a retest, the Department rejects the cadet from employment. SUMF ¶ 50. On September 21, 2016, Plaintiff scored a 70 on Protocol Quiz 1, failing to meet the minimum academic score of 80. SUMF ¶ 52. As a result of failing Protocol Quiz 1, Fire Academy staff met with Plaintiff and other cadets who failed and reviewed the answers and justifications for the quiz. SUMF ¶ 53. The Department offered Plaintiff and other cadets who had failed the quiz additional tutoring before the retest, of which Plaintiff did not avail himself. SUMF ¶ 54. On September 22, 2016, Plaintiff took the retest for Protocol Quiz 1 and again received a score of 70, ten points below the minimum score. SUMF ¶ 55 The Department rejected Plaintiff from probationary employment on September 26, 2016. SUMF ¶ 56. The sole reason for the City's decision to reject Plaintiff from probationary employment with PFD was his failure to pass the retest of Protocol Quiz 1. SUMF ¶ 57 The Department rejects any cadet who fails a retest of a protocols quiz. SUMF ¶¶ 50-51. The Department dismissed every cadet in Plaintiff's class who failed protocols quizzes and the subsequent retests. SUMF ¶ 51. It is also worth noting that the City provided additionally tutoring to those who sought further review of the subjects covered in the first protocols exam before the retest, and Plaintiff elected not to attend that tutoring. SUMF ¶ 54.

In conclusion, Plaintiff failed to qualify for the position of FSP cadet after failing the first protocols quiz and the retest.  As such, Plaintiff's dismissal from the Philadelphia Fire Academy was not motivated by any animus towards his disability or accommodation requests, but rather his failing to meet an objective benchmark, for which the City dismisses all cadets for failing to meet in all cases.

2. Plaintiff Fails to Establish a *Prima Facie* Case For Failure to Accommodate Because The City Made a Good Faith Effort to Accommodate Plaintiff and In Fact Fully Accommodated Plaintiff.

Plaintiff is unable to establish that City failed to accommodate and to engage in the interactive process with respect to his condition. To support this claim, Plaintiff must show: (1) that the City knew about his disability; (2) that he requested accommodations or assistance for his disability; (3) the City did not make a good faith effort to assist him in seeking accommodations; and (4) that he could have been reasonably accommodated but for the employer's lack of good faith. See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir.2004).

If the Court rejects the City's argument that Plaintiff is not a qualified individual, any claim that the City failed to accommodate Plaintiff still fails because he cannot establish that the City failed to make a good faith effort to assist him in seeking accommodations and that he could have been reasonably accommodated but for the City's lack of good faith.

The City and its representatives from the Fire Department, the Medical Evaluation Unit, the EEO Unit and IMX met with Plaintiff on multiple occasions to ensure that he received every reasonable accommodation to which he was entitled, whether he requested it or not. SUMF ¶¶ 7-21, 23-26, 28-31, 33-36. Representatives met and evaluated Plaintiff at his interview for the position of cadet and after he began training at the Academy. Id. The City granted every reasonable accommodation Plaintiff sought and had already obtained or was in the process of obtaining all necessary gear to accommodate Plaintiff at the time he failed the protocols quiz and retest. SUMF ¶ 29.

Plaintiff was not terminated based upon any physical failure on his part during training. Moreover, the City provided Plaintiff with the accommodation he requested – the video

laryngoscope – as well as additional tools that Dr. Galper proposed and equipment specifically made for Plaintiff, including his uniform boots and coat. SUMF ¶ 29. Plaintiff is unable to present evidence that the City denied his reasonable requests for an accommodation or that his rejection from probation was connected in any way to his disability or accommodation requests. Plaintiff claims that the City subjected him to a hostile work environment based on his disability. However, this claim fails because he cannot establish that he was subjected to severe or pervasive harassment on the basis of his disability or in retaliation for his request for an accommodation.

3. <u>Plaintiff Fails To Establish a *Prima Facie* Case For Hostile Work Environment Because He Cannot Establish That He Was Subjected to Severe and Pervasive Harassment on the Basis of His Disability or Requests For Accommodations.</u>

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of a disability." <u>Mercer v. Southeastern Pennsylvania Transit Authority</u>, 26 F.Supp.3d 432, 440 (E.D. Pa. 2014) (citing 42 U.S.C. § 12112(a). In order to succeed on this claim, "[P]laintiff must show that he suffered intentional discrimination because of his disability; the discrimination was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment'; the discrimination detrimentally affected him; and it would have detrimentally affected a reasonable person in his position." <u>Mercer</u>, 26 F.Supp.3d at 443 (quoting <u>Walton v. Mental Health Ass'n of S.E. Pa.</u>, 168 F.3d 661, 667 (3d Cir.1999); <u>see also</u> <u>Ballard-Carter v. Vanguard Grp.</u>, 703 F. App'x 149, 152 (3d Cir. 2017) (The ADA prohibits harassment that is so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive work environment). To determine if harassment meets the "severe or pervasive" standard, the Court considers the totality of the circumstances including frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. Ballard-Carter, 703 F. App'x at 152.

"[T]he Americans with Disabilities Act does not make all harassment, or every unpleasant working environment, actionable under the law. Rather, to constitute a hostile work environment under the ADA, the harassing conduct must be because of the plaintiff's disability." Sampson v. Methacton School Dist., 88 F.Supp.3d 422, 445 (E.D. Pa. 2015) (quoting Barclay v. Amtrak, 435 F.Supp.2d 438, 448-49 (E.D. Pa. 2006) (finding that the plaintiff failed to raise an issue of material fact that his disability rather than several other potential reasons was the basis for his employer's conduct). In order to determine whether Plaintiff has established these elements, courts "evaluate the record 'as a whole,' concentrating 'not on individual incidents, but on the overall scenario.'" Mercer, 26 F.Supp.3d at 443 (quoting Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001). Since a plaintiff must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [the victim's] employment," a plaintiff cannot rely upon casual, isolated, or sporadic incidents to support his claim of hostile work environment harassment. Howard v. Blalock Elec. Serv., Inc., 742 F. Supp. 2d 681, 692; see also McCall v. City of Philadelphia, 2013 WL 5823873, Civ. Action No. 11-5689 (E.D. Pa. 2013).

In the instant case, Plaintiff asserts he was subjected to a hostile work environment based on the following allegations: (1) Plaintiff says that Dr. Hayes told him to "think really hard" about if he wanted to proceed with his application to become a Philadelphia Fire Service Paramedic ("FSP") SUMF ¶¶ 33-36; (2) Lt. DiCicco "gawked" at his leg in the locker room SUMF ¶¶ 41-44; and (3) Lt. DiCicco said that burn patients are disgusting (in the context of explaining to the cadet class what kind of injuries they can expect to see in the field.) SUMF ¶¶

45-47. However, when examined closely, none of these three allegations are objectively hostile or abusive. First, Dr. Hayes explained during his deposition that his comments to Plaintiff suggesting he "think" about proceeding with his application to join the Philadelphia Fire Department were motivated by his desire to prepare Plaintiff for the mental and emotional challenges he would face. SUMF ¶ 35. Dr. Hayes explained that his deposition that his goal was to encourage, not discourage Plaintiff during this conversation. SUMF ¶ 36. Plaintiff even admits that Dr. Hayes was professional during the conversation at issue. SUMF ¶ 34. Second, Lt. DiCicco explained that he did not gawk and Plaintiff's leg in the locker room, but rather was examining him to determine if he needed medical assistance after Plaintiff potentially injured himself. SUMF ¶¶ 43-44. Finally, with regards to Lt. DiCicco's statement to the entire cadet class, Plaintiff elaborated at deposition that DiCicco's comments regarding burn patients were made as part of a presentation designed to prepare cadets for the entire gamut of injuries they can expect to see in the field. SUMF ¶¶ 45-46. Plaintiff does not assert that the comment was directed towards him; he simply suggests "it could have been." SUMF ¶ 47.

In Ballard-Carter, the Plaintiff, who suffered from a hearing deficiency and dyslexia, alleged that the following four comments were the basis of her hostile work environment claim:

> 1) "Oh, that's right, I forgot you were deaf," (2) "you're supposed to be talking loudly at your desk," (3) "we just said that you weren't listening," and (4) quotations around the word "heard" in an email to Ballard-Carter regarding a client request.
>
> 703 F. App'x at 152

The Third Circuit held that this conduct did not meet the severe or pervasive standard, stating that the comments could, at best, be considered uncivil, but certainly not severe enough as to alter the conditions of the plaintiff's employment. Id.

11

Frost's allegations of abusive conduct here do not rise to the level of those alleged in Ballard-Carter. Dr. Hayes' comments were not uncivil, much less deliberately abusive. SUMF ¶¶ 35-36. Lt. DiCicco's alleged locker room "gawk" was not accompanied by any abusive dialogue, not to mention the fact that he was attempting to assist Plaintiff at the time of the alleged gawking. SUMF ¶¶ 43. And finally, Lt. DiCicco's comments to the cadet class regarding burn victims were not deliberately directed towards Plaintiff, but rather were designed prepare the cadets and Plaintiff for the realities of serving as a FSP. SUMF ¶ 46. Although perhaps not the most tactful remark, describing freshly burned human flesh as "disgusting" may be necessary to mentally prepare FSPs for situations they may encounter on the job. As such, even if this Court were to find that the three incidents of alleged abusive behavior were harassing, these incidents did not constitute severe or pervasive conduct that altered Plaintiff's work environment. As such, Plaintiff's hostile work environment claims should be dismissed.

The three instances of alleged abusive incidents to which Plaintiff in this case claims to be subjected are clearly not objectively hostile or abusive once put in context. In fact, all three represent occasions where the City's employees were trying to assist Plaintiff or prepare Plaintiff and his fellow cadets for challenges ahead. As such, this Court should find that Plaintiff was not subjected to unwanted harassment and grant summary judgment for Defendant on Plaintiff's hostile work environment claims.

4. Plaintiff's Retaliation Claims Must Fail Because He Cannot Establish a Causal Connection Between His Protected Activity and An Adverse Employment Action

To establish a *prima facie* case of retaliation under the ADA, Plaintiff "must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Sampson, 88 F.Supp.3d at 435 (quoting

Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)); Shaner, 204 F.3d at 500

(identifying those elements in the ADA context). Courts the ADA retaliation claim is also

analyzed under the McDonnell Douglas burden-shifting framework. Larkin v. Methacton School

Dist., 773 F.Supp.2d 508, 529 (E.D. Pa. 2001).

      An "adverse employment action" is one that "well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry.

Co., 548 U.S. 53, 68 (2006). "A plaintiff can generally establish a causal connection by showing

that the temporal proximity between the protected activity and the adverse action is 'unusually

suggestive' or through a combination of timing and other evidence of ongoing antagonism or

retaliatory animus." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 80 (3d Cir. 2000).

      Plaintiff's retaliation claims must fail because he cannot establish that his rejection from

the Fire Academy was causally connected to his EEOC charge. Defendant notes that Plaintiff

filed his first EEOC charge on January 12, 2016, at which time Defendant was still in the process

of evaluating Plaintiff's medical clearances. SUMF ¶¶ 22. Nearly, six months after the filing of

his charge, Defendant's physician medically cleared Plaintiff to participate in training at the Fire

Academy. SUMF ¶ 31. Further, all of Plaintiff's requested accommodations were granted and

Plaintiff was permitted to begin training on September 12, 2016, with significant

accommodations. SUMF ¶¶ 29, 37. It defies common sense that Defendant would have

medically cleared Plaintiff and granted his accommodation requests if they truly harbored

resentment towards him based on his disability and his accommodation requests. Finally,

Plaintiff's termination did not come until more than nine months after his January 12, 2016

EEOC complaint, so there is no presumption of retaliation based on suspicious proximate timing.

SUMF ¶¶ 56. As such, Plaintiff cannot establish that his termination was motivated by retaliation and this Court should grant summary judgment for the City on his retaliation claims.

5. Plaintiff Cannot Prevail on his Wrongful Termination or Retaliation Claims Because He Cannot Overcome the City's Legitimate Non-Discriminatory Reason for Rejecting Him From Employment.

Claims of disability discrimination and retaliation under the ADAAA, PHRA[2], and PFPO are analyzed under the McDonnell Douglas burden-shifting paradigm. Sampson v. Methacton School Dist., 88 F. Supp. 3d 422, 434-435 (E.D. Pa. 2015) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973)). Under this framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination. Id. at 435. If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action. Sampson, 88 F. Supp.3d at 435 (citing Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Once the employer carries its burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were merely pretext for discrimination and not the true motivation for the adverse employment action. Jones v. School Dist. Of Phila., 198 F.3d 403, 410 (3d Cir. 1999). To survive a motion for summary judgment at the third step of the burden shifting analysis, a plaintiff must present some evidence, either direct or circumstantial, from which a jury could reasonably either disbelieve the employer's articulated legitimate reasons or believe that an invidious discriminatory reason was more likely

---

[2] The same legal standard applies to Plaintiff's claims under the ADA and the PHRA. Tiso v. Bucks County Cleaning, Inc., E.D.PA Civil Action No. 13-0253 (May 22, 2013) (Buckwalter, J.), citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

than not a motivating or determinative cause of the employer's action. Rubano v. Farrell Area
Sch. Dist., 991 F. Supp. 2d 678, 702 (W.D. Pa. 2014).

Plaintiff claims he was wrongfully terminated from the Academy. As set forth above with
respect to Plaintiff's failure to accommodate claim, because he has not established a *prima facie*
case of discrimination, he cannot recover under this theory. Taylor, 184 F.3d at 306. However, if
the Court were to find that Plaintiff has made a *prima facie* case, the burden shifts to the City "to
offer evidence of a legitimate, nondiscriminatory reason for the action." Anderson v. Wachovia
Mortg. Corp., 621 F.3d 261, 271 (3d Cir, 2010); Shaner, supra, 204 F.3d 494, 500 (3d Cir. 2000)
(applying the McDonnell Douglas framework to ADA claims). If the City "provides such a
reason, the presumption of discrimination raised by the *prima facie* case is rebutted, and plaintiff
must show by a preponderance of the evidence that the [City's] explanation is actually a pretext
for discrimination." Anderson, 621 F.3d at 271; see also St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 507-08 (1993). "Throughout this burden-shifting process, 'the ultimate burden of
proving intentional discrimination always rests with the plaintiff.'" Mercer, supra, 26 F.Supp.3d
at 445 (quoting Anderson, 621 F.3d at 271).

In order for Plaintiff to establish that the City's proffered reason for his rejection from the
Academy is a pretext for discrimination, he must provide evidence "from which a factfinder
could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2)
believe that an invidious discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action." Mercer, supra, 26 F.Supp.3d at 445 (quoting
Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013)). "To meet that burden, a plaintiff
cannot simply show that the employer's decision was wrong or mistaken." Fuentes v. Perskie, 32
F.3d 759, 765 (3d Cir. 1994); see also Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332

(3d Cir. 1995)("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason.").

Here, Plaintiff was dismissed from employment for a legitimate non-discriminatory reason. Specifically, the City rejected him from the Fire Academy, in accordance with PFD policy and practice, for failing the retest of the first protocols quiz. SUMF ¶¶ 48-57 Plaintiff cannot establish that this reason for his termination was pretextual. The record is abundantly clear that Defendant maintained and followed a policy whereby FSP cadets that failed to score an 80% or higher on a protocol quiz and then failed to score an 80% or higher on the retest of that quiz were rejected from the academy. SUMF ¶¶ 48-51. There is no evidence in the record to suggest that the Department selectively enforced this policy against Plaintiff or that it enforced it inconsistently in the past. Further, the record developed in this case shows that all other cadets who failed the same protocols quiz and retest were also rejected from probationary employment. Moreover, not only did Defendant attempt to reeducate the Plaintiff on the subjects of the protocols quiz between the first failed test and the retest, but Plaintiff refused the additional tutoring that Defendant offered to cadets in his position. SUMF ¶¶ 54. As such, Defendant's legitimate non-discriminatory reason is unimpeachable.

Finally, as Retaliation claims are also analyzed under the McDonnell Douglas burden-shifting paradigm, Plaintiff cannot overcome Defendant's legitimate non-discriminatory reason for rejecting Plaintiff from the Fire Academy—his failure to pass the first protocols quiz or the retest— to establish a Retaliation claim for the same reasons articulated above.

## VI.    CONCLUSION

In conclusion, Plaintiff has not established that a genuine issue of material fact exists as to any of his claims such that this case should proceed to trial. Plaintiff cannot establish a Failure to Accommodate claim because he was in fact accommodated. Plaintiff 's harassment claims must be dismissed because he cannot establish that he was subjected to severe and pervasive, unwelcomed harassment by Defendant. Plaintiff's discrimination and Retaliation claims must fail because he cannot establish that his rejection from probationary employment was motivated by an animus towards his disability, his requests for accommodations, or his protected activity. Finally, even if this court were to believe Plaintiff could establish a *prima facie* case of discrimination or retaliation, such claims should still be dismissed as Plaintiff cannot overcome Defendant's legitimate non-discriminatory reason—Plaintiff's failure to meet the testing requirements to graduate from the Fire Academy, which were historically and equally applied to other cadets as well—from terminating his employment with Defendant. Therefore, for these reasons and others more thoroughly articulated above, the Defendant respectfully requests this Court dismiss all counts of Plaintiff's Amended Complaint.

Should, for any reason, this Court not find that dismissal of all counts of Plaintiff's amended complaint is merited based on the arguments presented in this motion and any subsequent replies, the Defendant respectfully requests oral argument on its summary judgment motion.

*[Signature on Next Page]*

17

Respectfully Submitted,


CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>December 11, 2018</u>                    BY:  <u>s/ *Frank E. Wehr II*          </u>
                                                        Frank E. Wehr II
                                                        Assistant City Solicitor
                                                        Pa. Attorney ID No. 318464
                                                        City of Philadelphia Law Dept.
                                                        1515 Arch St., 16th Fl.
                                                        Philadelphia, PA 19102
                                                        (215) 683-5183
                                                        frank.wehr@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHASE FROST,** | **:** | |
| | **:** | |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | Civil Action No. 17-3869 |
| | **:** | |
| **CITY OF PHILADELPHIA,** | **:** | |
| | **:** | |
| Defendant. | **:** | |

## <u>CERTIFICATE OF SERVICE</u>

I, Frank E. Wehr II, hereby certify that on this date I caused the foregoing **Defendant City of Philadelphia 's Motion for Summary Judgment, Memorandum of Law and Proposed Order** to be filed electronically, where it is available for viewing and downloading.

Respectfully Submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

Date: <u>December 11, 2018</u>          BY: <u>s/ *Frank E. Wehr II*          </u>
                                        Frank E. Wehr II
                                        Assistant City Solicitor